UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LEE ANTHONY BROWN,

      Plaintiff,

    v.                                Case No. 22-cv-18-bhl

DAN CROMWELL, et al.,

      Defendants.

---

## SCREENING ORDER

---

Plaintiff Lee Anthony Brown, who is confined at the Oshkosh Correctional Institution and representing himself, filed a complaint under 42 U.S.C. § 1983 alleging that the defendants violated his civil rights. Dkt. No. 1. On March 3, 2022, the Court screened and dismissed without prejudice the original complaint because it violated Federal Rules of Civil Procedure 18 and 20. Dkt. No. 7 at 3-5. The Court gave Brown an opportunity to file an amended complaint that picked <u>one</u> of the nine unrelated claims he raised in his original complaint. *Id*. at 3-4. The Court instructed Brown to file his amended complaint by March 31, 2022, if he wanted to proceed with the lawsuit. *Id*. at 5. Brown filed an amended complaint on March 23, 2022. Dkt. No. 8. The Court will screen it below.

### ALLEGATIONS IN THE AMENDED COMPLAINT

Brown is currently an inmate at the Oshkosh Correctional Institution (OCI). Dkt. No. 8 at 1. Defendants are Redgranite Correctional Institution (RGCI) Warden Dan Cromwell, RGCI Security Director McHugh, RGCI Captain Hoch, OCI Security Director Toney Emil, OCI Captain Kuster, and OCI Captain Norman. *Id*. at 1-2.

On October 31, 2020, some correctional officers at RGCI went to Brown's cell in the middle of the night and took him to a bus that transferred him to OCI. *Id*. at 3. Brown states that he did not recognize any of the correctional officers who came to his cell, but McHugh and Hoch were the individuals who directed him to sit on the bus. *Id*. None of his personal belongings were transferred with him on the bus. *Id*. Brown also did not receive any written/oral notice of his transfer to OCI nor did he receive a "reclassification." *Id*. at 3-4.

Upon arriving at OCI, Brown was placed in solitary confinement. *Id*. at 4. Brown explains that he was entitled to a "DOC 67" order within 24 hours of his transfer and placement in solitary confinement, but he did not receive this document from anyone at OCI. *Id*. Brown asked Kuster numerous times why he was transferred to OCI and placed in solitary confinement, but Kuster simply responded that he didn't know. *Id*. Kuster confirmed that that none of Brown's personal belongings were sent with him. *Id*. Brown wrote to Emil several times about his circumstances, and Emil responded that Brown would be receiving a conduct report. *Id*. at 4-5.

A few weeks later, on November 20, 2020, Kuster hand-delivered a conduct report alleging that Brown "incited a disturbance." *Id*. at 5. During the interaction, Kuster said something along the lines of, "[you were] already found guilty once [you were] put on the bus and transferred." *Id*. Brown nevertheless requested a full due process hearing and requested that certain evidence be presented at the hearing that would definitively prove his innocence. *Id*. At some point, Kuster and Norman told Brown that Emil may approve "chang[ing] the code violation" if Brown would agree to accept, uncontested, a disposition of 120 days in solitary confinement along with a reclassification hearing. *Id*. Brown rejected the offer and maintained that he wanted a full due process conduct report hearing with certain evidence. *Id*. at 5-6.

On November 30, 2020, Norman held Brown's full due process conduct report hearing. *Id*. at 6. Norman found Brown guilty of a lesser code violation. *Id*. Brown states that he was not able to present evidence that would have "clearly proved" that "no disturbance had taken place." *Id*. Brown received 180 days in solitary confinement with a reclassification hearing. *Id*. at 5. Brown appealed the decision but the decision was affirmed. *Id*. at 6. Brown then filed an inmate complaint about the decision, and his inmate complaint was affirmed. *Id*.

The amended complaint is not totally clear on what happened next, but it appears as though the affirmation of the inmate complaint led to Brown's immediate release from solitary confinement. *See id*. But, at that point, Brown had already improperly spent 96 days in solitary confinement for no legitimate reason. *Id*. During that time, he had no personal property at all (including hygiene items), no recreation time, no opportunity to clean his cell, no religious materials, and no legal materials. *Id*. at 6-7. For relief, Brown seeks monetary damages and several injunctions. *Id*. at 8.

### THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). Section 1983 limits liability to individuals who are personally responsible for a constitutional violation. *Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009). "An official satisfies the personal responsibility requirement of section 1983. . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (quoting

3

*Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982)). He or she "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.* (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)).

Brown asks to proceed with a Fourteenth Amendment due process claim and a failure to intervene claim. Dkt. No. 8 at 6-7. To state a Fourteenth Amendment due process claim, Brown must allege: (1) that he has a "liberty" interest at stake; and (2) the "procedures" used to deprive him of his liberty were constitutionally deficient. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (citing *Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994)).

A prisoner's liberty interest with respect to prison disciplinary proceedings generally extends only to freedom from deprivations that impose an "atypical and significant hardship" on the inmate in relation to the ordinary incidents of prisoner life. *Lekas v. Briley*, 405 F.3d 602, 608 (7th Cir. 2005) (citing *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)). Placement in solitary confinement can trigger a liberty interest. *Marion v. Columbia Correctional Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) (citations omitted). The Court must analyze "the combined import of the duration of the [] confinement and the conditions endured by the prisoner during that period." *Id*. If conditions in solitary confinement are significantly harsher than those in the normal prison environment, then a liberty interest may arise even when the duration of the confinement, standing alone, would not trigger such an interest. *Id*. at 697-98. For example, six months of solitary confinement is not such an extreme term that, standing alone, would trigger due process rights. *Id*. at 698. But that, along with other extreme conditions that are atypical or harsh in comparison to the ordinary incidents of prison life, may trigger a liberty interest. *Id*. at 697. The Seventh Circuit has advised that, "without a factual record," the Court cannot properly determine whether the

4

actual conditions of an inmate's solitary confinement are harsher than the conditions found in the ordinary incidents of prisoner life. *Id*. at 699.

Once an inmate implicates a liberty interest, the Court then looks to what "process" was due. *Scruggs*, 485 F.3d at 939. Prison disciplinary hearings satisfy procedural due process requirements if an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). The decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).

Based on the allegations in the amended complaint, the Court can reasonably infer that Brown's Fourteenth Amendment right to due process may have been violated with respect to his placement in solitary confinement at OCI and the related conduct report disciplinary hearing on November 30, 2020. Brown alleges that he was placed in solitary confinement for 96 days without any of his property from RGCI, including basic hygiene items. He alleges that he did not have access to items typically allowed in prison, such as religious materials, legal materials, and scrivening materials. And he did not get any recreation time at all, which is uncommon even in maximum security prisons. At this stage of the litigation, these allegations are sufficient to trigger a liberty interest.

Next, Brown alleges that he did not receive a "DOC 67" giving him notice within 24 hours of why he was in solitary confinement and what he was charged with. Brown also was not allowed to present evidence at his conduct report hearing that allegedly would have definitively exonerated him from the charges in the conduct report. Brown does not clearly explain who was responsible

for preventing him from presenting the evidence he wanted to present at his hearing. He mentions that Emil, Kuster, and Norman were all aware of his requests to present evidence and they all worked together to attempt to prevent that from happening by trying to coerce him into a lesser charge. Based on these allegations, the Court will allow Brown to proceed with a Fourteenth Amendment due process claim against Emil, Kuster, and Norman with respect to his placement in solitary confinement at OCI and the related conduct report disciplinary hearing on November 30, 2020. Following discovery and dispositive motions, the Court will better be able to determine personal involvement and liability.

Brown cannot proceed with his claims against Cromwell, Hoch, and McHugh. Brown alleges no facts at all about Cromwell. His role as a supervisor at RGCI, alone, does not make him responsible for the actions of others. *Burks*, 555 F.3d at 594. Further, Brown alleges no facts indicating that either Hoch or McHugh (both of whom worked at RGCI) were aware of any issues with Brown's placement in solitary confinement at OCI or with the related conduct report disciplinary hearing on November 30, 2020. Individuals who do not know about a constitutional violation cannot be personally responsible for failing to intervene to fix it. *See Fillmore v. Page*, 358 F.3d 496, 505–06 (7th Cir. 2004) (noting that the personal responsibility requirement of a failure to intervene claim requires that a correctional officer must have known about the constitutional violation and had a "realistic opportunity to step forward and prevent a fellow correctional officer from violating a plaintiff's rights…") Hoch and McHugh were certainly aware that Brown was being transferred to OCI given that they were the individuals who directed Brown to sit on a bus on October 31, 2020. But that does not lead to the inference that they knew Brown would not receive the requisite notice within 24 hours of being there, or that they knew the officers at OCI would violate his constitutional rights in relation to a conduct report hearing. The Court

6

will therefore dismiss the claims against Cromwell, Hoch, and McHugh. They will be removed from this case.

## Conclusion

The Court finds that Brown may proceed with a Fourteenth Amendment due process claim against Emil, Kuster, and Norman with respect to his placement in solitary confinement at OCI and the related conduct report disciplinary hearing on November 30, 2020.

**IT IS THEREFORE ORDERED** that the claims against Cromwell, Hoch, and McHugh are **DISMISSED.**

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Brown's amended complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Emil, Kuster, and Norman.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Emil, Kuster Norman shall file a responsive pleading to the amended complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

Dated at Milwaukee, Wisconsin on April 14, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge